### In re IMPOUNDED CASE (LAW FIRM).

#### No. 87–5190.

United States Court of Appeals, Third Circuit.

Argued Jan. 5, 1988.

Decided Feb. 29, 1988.

Rehearing and Rehearing In Banc Denied March 25, 1988.

Irene Dowdy, Asst. U.S. Atty. (argued), Samuel A. Alito, Jr., U.S. Atty., Trenton, N.J., for appellants.

Michael R. Perle (argued), Joseph A. Hayden, Jr., Hayden & Perle, Hoboken, N.J., for appellee.

Before SEITZ, HUTCHINSON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

### I. *JURISDICTION*

Appellants, a named Special Agent in the Criminal Investigation Division of the Internal Revenue Service ("I.R.S."), fifteen unidentified I.R.S. agents and two Department of Justice attorneys (collectively "the government"), appeal from paragraph 1 of the order of the district court entering judgment on the pleadings in favor of appellee law firm, a professional corporation.

Paragraph 1 granted the law firm's prayer for injunctive relief by ordering the government to return all documents seized pursuant to a search warrant, as well as any duplicates thereof.

The district court had jurisdiction of this action pursuant to 28 U.S.C. § 1331 (1982).[1] The law firm's prayer for injunctive relief stated a claim for which relief can be granted. *Klitzman, Klitzman & Gallagher v. Krut,* 744 F.2d 955, 959 (3d Cir. 1984).[2] Because the injunction issued by the district court goes to the merits of the controversy and has serious consequences, we have jurisdiction under 28 U.S.C. § 1292(a)(1) (1982). *Williams Elecs., Inc. v. Artic Int'l, Inc.,* 685 F.2d 870, 871 (3d Cir.1982).

### II. *FACTS*

The government sought a search warrant authorizing the search of the law firm's office and the seizure of certain items from the office. The government's application was supported by the affidavit of the Special Agent. The magistrate found that there was probable cause to believe that evidence of certain crimes would be found at the office. They involved tax evasion, 26 U.S.C. § 7201 (1982), filing false or fraudulent returns, 26 U.S.C. § 7206 (1982), mail fraud, 18 U.S.C. § 1341 (1982), and conspiracy to commit mail fraud, 18 U.S.C. § 371 (1982). After the magistrate issued the warrant, and the documents in question were seized,[3] the law firm filed a complaint in the district court seeking injunctive relief and damages for injuries allegedly sustained as a result of the search and seizure.[4]

---

**1.** Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution ... of the United States." 28 U.S.C. § 1331 (1982).

**2.** In light of *Klitzman,* we need not consider whether the procedure for the return of property by way of a motion under Federal Rule of Criminal Procedure 41(e) is anything other than an alternative remedy for the return of seized property.

**3.** Approximately 420 complete files were seized from the law firm's office and documents were

taken from various other closed personal injury files.

**4.** The law firm asserted that it was thus entitled to legal and equitable relief under 42 U.S.C. § 1983 (1982). The defendants in this action were federal officers, and thus no relief is available under section 1983. Plaintiffs are not, however, without a remedy. *See Klitzman, Klitzman & Gallagher v. Krut,* 744 F.2d 955, 959 (3d Cir.1984) (upholding preliminary injunction against federal officers ordering return of seized documents); *cf. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (discussing

In response to the law firm's motion for judgment on the pleadings, the district court, *inter alia,* entered judgment in favor of the law firm on count I of the complaint.[5] The district court granted relief solely on the ground that the warrant was overbroad and thereby violated the law firm's fourth amendment right to be free from unreasonable searches and seizures. In addition, the district court ordered the government to return all documents and materials seized from the office of the law firm as well as any copies, facsimiles or duplicates thereof. The injunctive portion of the order has been stayed with the law firm's consent. This appeal followed.

In his affidavit, the Special Agent asserted that there was probable cause to believe that the law firm and some of its owners and employees had been and were engaged in violations of federal criminal statutory provisions. The Special Agent based this belief on information given him by two informants: a named former accountant of the law firm and a confidential informant.

The accountant had informed the Special Agent, *inter alia,* that: 1) each closed case file contained financial documents that showed the amount received in settlement of the case and the law firm's costs attributed to the lawsuit; 2) he had been told by a member of the law firm to determine the gross receipts of the firm by adding up the deposits made to the firm's bank account; 3) the gross receipts figure thus obtained was then reported on the Forms 1120 filed by the law firm; 4) on a regular basis, members or employees of the law firm would accompany clients to the bank, cash settlement checks received in lawsuits and retain the firm's share in cash rather than depositing it into the law firm's bank account; 5) the law firm's practice had been to deposit into its bank account gross receipts only slightly in excess of the firm's expenses; and 6) the law firm had engaged in a practice of inflating the supposed medical bills of some of its clients.

The confidential informant had informed the Special Agent, *inter alia,* that: 1) on a continuing, regular basis, a member or employee of the law firm would accompany clients to the bank where settlement checks would be cashed and the law firm would retain its share in cash; 2) closed case files contained documents showing the amounts received in settlements or judgments and the costs attributed by the law firm to the action; 3) in some instances, the law firm procured doctor's statements that overstated the treatment given, thus inflating the medical costs attributed to clients' injuries; these inflated cost figures were used by insurance companies in arriving at settlement figures; 4) the law firm engaged in the practice of fabricating insurance claims and causes of action; 5) personal injury files were identified by specified markings; 6) criminal case files were marked "crim"; 7) when a file was closed, the date on which it was closed was marked on its exterior; 8) every file marked with a star contained fraudulent doctor's reports and/or statements; 9) every file marked with an orange sticker was a case in which the cause of action or claim was fabricated; 10) a specified office suite contained only files of cases in which a fraudulent claim or cause of action had been created; and 11) the evidence of fraudulent activities and tax evasion was contained throughout the files of the law firm and was not limited to the files of any particular attorney.

The warrant authorized the seizure of:

1. Lined ledger sheets, contained in closed personal injury files, which show, along with identifying information, amounts of monies received by way of settlement of personal injury lawsuits.

2. $8\frac{1}{2}'' \times 11''$ pieces of paper contained in closed personal injury files which show the client's name, the firm's costs attributed to the lawsuit, the name of the insurance company involved in the suit, and the amount received in settlement.

---

damage remedy for fourth amendment violation by federal officers).

**5.** The proceedings with respect to the remaining counts of the complaint are not before us on this appeal.

3. Photocopies of checks received by way of settlement of personal injury case files.

4. Personal injury files, open or closed, containing, on their outside, either orange stickers, stars, or both.

5. Personal injury files, open or closed, located in the first floor office suite to which access is obtained by walking into the carport-type breezeway from the front of the building and entering the door to one's right.

The magistrate imposed the following additional conditions on the search and seizure:

1. All personal injury files located in the first floor office suite, which is described in paragraph five [above], may be seized.

2. All personal injury files located in either the basement or third floor and not subject to seizure as set forth above may be examined only to the extent needed to identify the following items, which may be seized:

a. Lined ledger sheets that show, along with other information, the amounts received by way of settlement of lawsuits;

b. 8″ × 11″ pieces of paper that show the client's name, the law firm's costs attributed to the lawsuit, the name of the insurance company involved in the suit and the amount received by way of settlement of the lawsuit;

c. Photocopies of checks received by way of settlement of lawsuits.

d. This inspection is specifically limited to on-site inspection only to the extent necessary to retrieve these readily identifiable items described in (a), (b) and (c) above, in recognition of special concern for privacy interests in this case and to avoid intrusion into the contents of confidential communications existing between attorneys of the subject firm and the firm's clients.

4. No files containing the notation "Crim" are to be searched nor seized.

5. No desks being used as work spaces, as opposed to storage, may be searched.

6. No files closed prior to 1978, nor documents contained therein, may be seized.

7. The personal injury files for which authorization to search and seize is hereby granted bear one or more of the following identifying markings: [an upside-down "v"], GP, Personal injury, PIP, ¿, DA, [a five-pointed star], or orange or green stickers. Files not bearing such markings may not be searched nor seized.

8. In recognition of special concern for privacy interests in this case in which a search or seizure of certain documents may intrude upon confidential relationships existing between attorneys in the subject firm and the firm's clients, the contents of the personal injury files seized under paragraphs 4 and 5 of this search warrant are not to be inspected until further leave of the court, after due notice to the law firm.... The United States shall make such application within twenty (20) days of seizure, unless there is previously filed an appropriate motion for return of property under Rule 41(e), Fed.R.Crim.P., or other appropriate motion regarding the status of the seized property.

## III. DISCUSSION

▪ The district court issued the injunctive order for the return of documents based on its conclusion that the warrant was unconstitutionally overbroad. "Although terms of an injunction are normally reviewed for abuse of discretion, any determination that is a prerequisite to the issuance of an injunction ... is reviewed according to the standard applicable to that particular determination." *John F. Harkins, Inc. v. Waldinger Corp.*, 796 F.2d 657 (3d Cir.1986) (citing *Weiss v. York Hosp.*, 745 F.2d 786, 829–30 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985)), *cert. denied*, — U.S. ——, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987). Therefore, we exercise plenary review over the district court's legal conclusion that the fourth amendment compelled

the determination that the warrant was overbroad.

This appeal requires us to consider the requirements of the fourth amendment in the context of law office searches. We begin by noting that searches of law offices and seizures of materials therefrom are not *per se* unreasonable. *Klitzman,* 744 F.2d at 959. Indeed, courts have consistently allowed searches of law offices when the attorneys involved were the targets of criminal investigations. *See, e.g., Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). In *Klitzman,* this court stated that the appropriate role of the reviewing court in such circumstances is to "scrutinize carefully the particularity and breadth of the warrant authorizing the search, the nature and scope of the search, and any resulting seizure." *Klitzman,* 744 F.2d at 959.

With these guidelines in mind, we turn to the instant action. The district court began by noting that the law firm had conceded the existence of probable cause to believe that at least one member of the law firm had violated the federal criminal laws and that evidence of the violation was likely to be found at the law office. These aspects of probable cause are not at issue here. The district court held, however, that the *scope* of the warrant was not supported by probable cause, i.e., that the warrant was overbroad.[6] The sole issue on appeal is whether the district court's determination that the scope of the warrant was not supported by probable cause was correct.

■ To determine whether the warrant was overbroad, we must compare the scope of the search and seizure authorized by the warrant with the ambit of probable cause established by the supporting affidavit. *United States v. Christine,* 687 F.2d 749 (3d Cir.1982). The district court correctly noted that the magistrate's determination of probable cause should be paid great deference by reviewing courts. *See Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). We turn to the comparison suggested by *Christine* for each species of alleged criminal violation.

### A. *The Corporate Tax Crimes*

■ With regard to the suspected corporate tax crimes, the district court found that the warrant was overbroad because the affidavit "did not establish probable cause with respect to the universe of files that were to be searched and the items that were to be seized." In so finding, the court relied on *Klitzman,* stating that "here, as in *Klitzman,* the warrant makes no attempt to distinguish those closed files with incriminating evidence from those without such evidence." The law firm agrees with the district court, asserting that the affidavit did not establish probable cause to believe that all of the law firm's members were participating in the alleged tax crimes. The government counters that the seizure of the financial documents was unobjectionable under the fourth amendment because *any* document likely to show actual amounts received can properly be seized whenever there is probable cause to suspect that the crime of tax evasion or the crime of underreporting of gross income has been committed.

On this record, we need not adopt the broad proposition tendered by the government. Rather, we conclude that under the facts and circumstances of this case, the authorized seizure comported with the requirements of the fourth amendment. In reaching this conclusion, we note that the affidavit pointed to *specific* types of financial documents that reflected amounts received in lawsuits as well as costs attributed to those lawsuits. Additionally, we note that the affidavit stated that the firm's failure to deposit its shares of settle-

---

6. Although it held the warrant overbroad, the district court found that the warrant was sufficiently particularized to comport with the fourth amendment because the executing officers had no discretion as to what materials could be searched or seized. The court's con-

clusion regarding particularity is not an issue on this appeal.

Furthermore, the district court found that the magistrate had a substantial basis for crediting the hearsay statements of both informants.

ments was a regular and continuing practice. The allegation of this practice, coupled with the law firm's alleged use of its bank deposits as its gross income figure, supports the scope of the authorized seizure with respect to the alleged corporate tax crimes.

The law firm contends that the warrant was overbroad as to the scope of materials seized because the affidavit did not contain the names of the attorneys and clients involved in the instances in which the law firm allegedly retained its settlement share in cash and failed to deposit the entire share in the law firm bank account. In light of the showing made in this case, we reject the law firm's contention. It would be unrealistic to require an informant to provide such detailed information under the circumstances. More important, the amount of detail that the law firm would require is simply not mandated by the fourth amendment.

Furthermore, we find the district court's reliance on *Klitzman* misplaced. In *Klitzman*, one attorney in a law firm was a target of a grand jury investigation of suspected mail fraud. The warrant that was invalidated in *Klitzman* authorized a wholesale search and seizure of the business records of the law firm, whether or not those documents were related to the information sought by the grand jury. By way of contrast, the affidavit in the instant case alleged a continuing pattern of underreporting of corporate gross receipts and specified the types of and location of documents that could be used to reconstruct the actual gross receipts of the law firm. We have reviewed the law firm's arguments attacking the affidavit and the warrant, and find those arguments meritless. Accordingly, we hold that the affidavit was sufficient to support the magistrate's issuance of the warrant authorizing the seizure of the lined ledger sheets, the 8½″ × 11″ pieces of paper and the photocopies of checks received by way of settlement of personal injury cases. Thus, the warrant was not overbroad with respect to those items.

### B. *The Mail Fraud*

With respect to the alleged mail fraud, the district court found that the failure to provide more particular identifying information than that furnished in the affidavit rendered the warrant overbroad in scope. Specifically, the district court found, and the law firm argues on appeal, that the failure of the affidavit to name specific cases, clients, doctors or attorneys connected with instances of fraud renders the warrant unconstitutionally overbroad. The government contends, however, that the authorized seizure of files from the first floor suite and files marked with stars or orange stickers passes muster under the fourth amendment because the affidavit supported the conclusion that all such files represented cases in which fraudulent claims had been made.

In light of the affiant's statement that *all* such files represented cases in which fraudulent claims had been made, we fail to see why we should cast on the government the onerous burden of listing, by name, each file that fell within the described groups of files. It is illogical to suggest that an affidavit stating that every file in a specified, readily identifiable group of files contains a fraudulent claim provides any less probable cause than an affidavit identifying by name every file in that group. When an entire, discrete body of evidence is described, the naming of every component of that body is mere surplusage.

The district court again relied on *Klitzman* to support its conclusion that the warrant was fatally overbroad. The warrant in this case, however, is easily distinguished from the warrant at issue in *Klitzman*. While the *Klitzman* warrant authorized the seizure of case files not tied to the alleged mail fraud scheme by the supporting affidavit, the warrant in the instant case authorized the seizure of a group of files all of which, according to the affidavit, contained evidence of fraudulent claims. Accordingly, we hold that the affidavit was sufficient to support the magistrate's issuance of the warrant authorizing the seizure of files from the first floor suite and

202

files marked with stars or orange stickers. In consequence, the warrant was not over-broad with respect to those items.

## IV. CONCLUSION

In light of the foregoing discussion, we hold that the district court erred in finding the warrant overbroad. In so holding, we are cognizant of the concern that some of the items seized might contain privileged information. We are satisfied that the attorney-client privilege is sufficiently protected by the procedure established by the magistrate requiring that the government obtain leave of the court before examining any seized items. Furthermore, we believe that this procedure will provide assurance that disclosure will be limited to those materials sought by the government. We will therefore reverse paragraph 1 of the order of the district court directing the return of documents to the law firm and we will remand the matter to the district court for further proceedings consistent with this opinion.