KLITZMAN, KLITZMAN and
GALLAGHER

v.

Robert J. KRUT, Vernon Holmes, W.
Hunt Dumont, Michael Milner,
Appellants.

No. 84–5443.

United States Court of Appeals,
Third Circuit.

Argued Aug. 13, 1984.

Decided Sept. 17, 1984.

---

W. Hunt Dumont, U.S. Atty., Ralph A. Jacobs (Argued), Chief, Appeals Div., Paul

J. Dillon, Asst. U.S. Atty., Newark, N.J., for appellants.

Alfred C. DeCotiis (Argued), Richard T. Philips, DeCotiis & Philips, West Orange, N.J., for appellee.

Before ALDISERT, Chief Judge, WEIS, Circuit Judge, and RE, Judge.*

## OPINION OF THE COURT

ALDISERT, Chief Judge.

The government has appealed from the grant of a preliminary injunction commanding the return of documents and records seized at a law office pursuant to a search warrant. The district court held that the search and seizure violated the fourth amendment because the search was overbroad, and granted the injunction. After the government announced its intention to appeal immediately, the district court placed the seized materials under seal. The government then petitioned this court for relief from the injunction and requested a stay of the order and an expedited briefing schedule. We granted the stay, preserved the status of the materials under seal, and expedited the appeal. Because we agree that the search was overbroad, we now affirm the judgment of the district court granting the preliminary injunction, lift the stay, and order the return of the seized materials to the law office.

### I.

Charles Klitzman, an attorney, was the target of a grand jury investigation of an alleged conspiracy to use the U.S. Mail to defraud insurance companies by submitting fraudulent medical reports and inflated medical bills in personal injury cases. As part of the investigation, U.S. Postal Inspectors searched Klitzman's law office, Klitzman, Klitzman and Gallagher, in Asbury Park, New Jersey.

There is no dispute as to the facts. The postal inspectors accomplished the search pursuant to three search warrants. The first warrant authorized the seizure of all closed or non-active files of personal injury claimants, business bank account records of the firm, ledger books concerning trust accounts, retainer and compensation agreements and financial records pertaining to personal injury clients, records reflecting payments to attorneys, investigators, and other third parties, case registers, legal diaries, telephone message books and pads, visitors logs, telephone toll records, and any other evidence of a conspiracy to defraud insurance companies. The magistrate issued the warrant based on the affidavit of Postal Inspector Robert Krut detailing particular examples of false or inflated medical bills submitted on behalf of Klitzman's clients.

The second warrant authorized the seizure of certain open files of personal injury claimants. The third warrant extended the scope of the search to include the storage room of the law firm. The affidavits of Postal Inspector Vernon Holmes formed the basis for these latter two warrants.

Government agents occupied Klitzman's office for a full day while performing the search, resulting in the closing of the office to clients. The postal inspectors required two trucks to haul away 2,000 files and numerous financial documents seized at the law firm.

### II.

In seeking a preliminary injunction to compel the government to return the seized materials, plaintiff, the Klitzman firm, argued that: (1) there was no probable cause for the issuance of the warrants; (2) the warrants lacked sufficient particularity; (3) a search of a law office is *per se* unreasonable; and (4) the search was overbroad. The district court rejected plaintiff's first three contentions, implicitly resting its finding that plaintiff was likely to succeed on the merits on the conclusion that the search was overbroad.

---

* Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

The government contended that the search warrant properly was limited "to closed personal injury files which contained reports and bills for professional services by medical practitioners, and other records associated with the preparation and presentation of closed personal injury claims." *Klitzman, Klitzman & Gallagher v. Krut*, 591 F.Supp. 258, 268 (D.N.J.1984).

The district court, however, concluded that the warrant permitted a far broader search, encompassing materials and documents from the entire range of Charles Klitzman's individual law practice and also from much of the rest of the firm's practice. The court found that the inspectors examined and seized materials irrespective of their relationship to the alleged conspiracy, and regardless of whether the files searched were open or closed. The court also determined that the warrant allowed the seizure of files that contained potentially privileged information, and many financial records that, even if not privileged, could not be regarded as necessary or relevant to proving the alleged scheme to defraud insurance companies.

The warrant undeniably allowed the seizure of all file lists and appointment books without regard to whether the materials had any connection to particular alleged crimes or to personal injury cases in general. Moreover, as the district court determined, the warrant required the impoundment of all closed personal injury files, without requiring the postal inspectors to make any effort to segregate the files according to physicians involved, types of personal injury claims at issue, or other indicia that would protect the privacy interests of uninvolved lawyers and clients. *Id.* The district court, therefore, held that the search violated both the attorney-client privilege and the Privacy Protection Act, 42 U.S.C. § 2000aa–11,[1] because the search included in its scope materials emanating from confidential relationships between lawyers not suspected of criminal activity and their clients.

## III.

■ Although other issues are suggested in this appeal,[2] we will consider only the appeal from the injunctive order. We will invoke the familiar standards for review of the grant or denial of a preliminary injunction. The law has entrusted the power to grant or deny an injunction to the discretion of the trial court in the first instance, and not to the appellate court. Unless that court abuses its discretion, commits an obvious error in applying the law, or makes a serious mistake in considering the proof, the appellate court must take the judgment of the trial court as presumptively correct. *National Land & Investment Co. v. Specter*, 428 F.2d 91, 95 (3d Cir.1970); *Stokes v. Williams*, 226 F. 148, 156 (3d Cir.1915), *cert. denied*, 241 U.S. 681, 36 S.Ct. 728, 60 L.Ed. 1234 (1916). This limited review is appropriate because a court nearly always bases the grant or denial of an injunction on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury that possibly could flow from the denial of preliminary relief. *United States Steel Corp. v. Fraternal Association of Steelhaulers*, 431 F.2d 1046, 1048 (3d Cir. 1970).

■ In exercising its limited review of the grant or denial of preliminary injunctive relief, the appellate court asks: (a) did the movant make a strong showing that it

---

1. The Privacy Protection Act demands generally "a recognition of special concern for privacy interests in cases in which a search or seizure for such documents would intrude upon a known confidential relationship such as that which may exist between clergyman and parishioner; lawyer and client; or doctor and patient ...." 42 U.S.C. § 2000aa–11(a)(3).

2. Appellees asserted a claim for damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and the government countered with an immunity defense that it also asserts in this appeal. Because the district court has stayed consideration of the *Bivens* aspect of this case until the related criminal dispute is resolved, we will not meet the immunity issue in this accelerated appeal.

is likely to prevail on the merits? (b) did the movant show that, without such relief, it would be irreparably injured? (c) would the grant or denial of a preliminary injunction substantially have harmed other parties interested in, or affected by, the proceedings? (d) where lies the public interest? *A.O. Smith Corp. v. FTC,* 530 F.2d 515, 525 (3d Cir.1976); *see also Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.,* 630 F.2d 120, 136 (3d Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980); *Constructors Association of Western Pennsylvania v. Kreps,* 573 F.2d 811, 814–15 (3d Cir.1978). With these criteria in mind, we turn to the arguments presented to us.

### IV.

In granting the preliminary injunction, the district court made two essential determinations. The court found that the law firm had made a strong argument that it would prevail on the merits of the litigation, based on its claim that the search was overbroad. Second, the court held that the plaintiff met its burden of proving irreparable injury, amply demonstrating both that the law firm could not function without many of the seized materials, and, more important, that the seizure represented a gross imposition on the attorney-client privilege. We first consider whether plaintiff carried its burden by making a strong showing that it was likely to prevail on the merits.

### A.

■ The district court correctly rejected plaintiff's other objections to the search, finding that only the overbreadth claim was substantial. There is little doubt that probable cause existed for a search of plaintiff's offices. Postal Inspector Krut's affidavit, upon which the magistrate based the issuance of the primary warrant, stated that postal inspectors had interviewed approximately thirty clients of the Klitzman firm who testified as to the fraudulent activities. Probable cause, therefore, existed to believe that a federal crime had been committed and that plaintiff's office may have been "the place of concealment of evidence of the crime." *Zurcher v. Stanford Daily,* 436 U.S. 547, 558, 98 S.Ct. 1970, 1978, 56 L.Ed.2d 525 (1978). Moreover, the magistrate's determination that probable cause existed is entitled to great deference by a reviewing court. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983).

■ Little doubt also exists that the warrants issued were sufficiently particular. They described in detail the premises to be searched and the items to be seized, leaving nothing to the discretion of the officers executing the warrants. *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). In fact, when confusion arose as to whether the first warrant permitted open files to be seized or a storage room to be searched, the postal inspectors obtained separate warrants that authorized, with particularity, these activities.

■ A search of a law office is not, as plaintiff argued below, *per se* unreasonable. Courts consistently have upheld searches of law offices where, as here, the attorney at issue was the target of a criminal investigation. *See, e.g., Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *In re Application of the United States for an Order,* 723 F.2d 1022 (1st Cir.1983); *National City Trading Corp. v. United States,* 635 F.2d 1020 (2d Cir.1980); *cf. O'Connor v. Johnson,* 287 N.W.2d 400 (Minn.1979) (*per se* rule against law office searches when attorney not suspected of criminal wrongdoing). We therefore believe that the correct approach to this issue, as articulated by the district court, is not to immunize law offices from searches, but to scrutinize carefully the particularity and breadth of the warrant authorizing the search, the nature and scope of the search, and any resulting seizure. Accordingly, we now address plaintiff's contention regarding the scope of the search.

█ We conclude that substantial support exists for the view that the search of the Klitzman firm was overbroad. The warrants, albeit particular, authorized the postal inspectors to search *all* client files, open or closed, to determine which personal injury case files to seize. The warrants also allowed the seizure of all of the firm's financial records, file lists, and appointment books, regardless of whether those documents were connected in any way to the personal injury files sought by the grand jury. In effect, the warrants authorized virtually a wholesale search and seizure of the business records of the firm. As such, we believe that, as the district court found, plaintiff was likely to succeed on the merits of its claim that the search was overbroad and therefore constitutionally infirm.

### B.

We also agree with the district court that the Klitzman firm suffered irreparable harm. The law firm has been denied the use of a major source of daily working materials. Files in a law office serve much the same precedential purpose for the firm's personnel as reported court decisions serve for the legal profession generally. Legal memoranda and summaries prepared for specific cases, pleadings, interrogatories, unreported opinions, legal research recorded in correspondence to and from the office—all serve as indispensable working tools for the functioning of an established law office. To deny these materials to lawyers is to expose them to irreparable harm.

More important, in our view, is the effect of the seizures on third parties, either interested in, or affected by, the government's action. Specifically, we address the attorney-client privilege. The attorney-client privilege is the oldest confidential communications privilege known to the common law. "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.

The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980). The privilege's purpose is to encourage clients to make a full disclosure to their attorneys. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).

Documents within the scope of the attorney-client privilege are "zealously protected." 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2017 (1970); *see Chore-Time Equipment, Inc. v. Big Dutchman, Inc.*, 255 F.Supp. 1020, 1021 (W.D.Mich.1966) ("[I]t generally is acknowledged that the attorney-client privilege is so sacred and so compellingly important that the courts must, within their limits, guard it jealously."); *In re Grand Jury Subpoena Duces Tecum*, 391 F.Supp. 1029, 1034 (S.D.N.Y.1975) (where one part of a memorandum is privileged and doubts exist as to other parts, doubt resolved in favor of application of the privilege).

█ The privilege extends to verbal statements, documents, and tangible objects conveyed by both individual and corporate clients to an attorney in confidence for the purpose of any legal advice. 8 J. Wigmore, *Evidence* § 2292 (J. McNaughton rev. ed. 1961). *See also United States v. Liebman*, 742 F.2d 807 (3d Cir.1984). Although the privilege belongs to the client and only he may waive it, an attorney may assert the privilege on his client's behalf. *McCormick on Evidence* § 92 (E. Cleary 3d ed.1984). Moreover, the canons of ethics make the attorney's common law obligation to maintain the secrecy of his communications with his client a professional mandate. *See* Model Rules of Professional Conduct

Rule 1.6 (1983); Model Code of Professional Responsibility DR 4–101 (1980).

No one can deny that the government's action in this case completely disregarded any concept of the attorney-client privilege. The materials the postal inspectors searched for and seized pursuant to the warrants constituted the existing records of an entire law practice. The government made no attempt to limit the seizure to files of clients who may have alleged that their medical bills were overstated or to materials involving the medical personnel allegedly involved in the fraudulent scheme under investigation. Rather, this government rampage potentially or actually invaded the privacy of every client of the Klitzman firm. The government well knew, prior to the search, that the client files contained privileged communications, yet the government took not one step to minimize the extent of the search or to prevent the invasion of the clients' privacy guaranteed by the attorney-client privilege.

However devoid of professionalism the irresponsible actions of the postal inspectors were—and we find this lack of professionalism to be profound—we are even more distressed by the actions of the office of the United States Attorney for the District of New Jersey. That office affixed its imprimatur of approval to a rampant trampling of the attorney-client privilege and, equally important, the work product doctrine.

Moreover, lawyers (other than Charles Klitzman) who were not under investigation became the objects of the search and seizure. Congress has recognized that privacy interests are implicated when the government indiscriminately uses search warrants to obtain documentary evidence. The Privacy Protection Act of 1980, 42 U.S.C. §§ 2000aa to 2000aa–12, is applicable when law enforcement agents attempt "to obtain documentary materials in the private possession of a person when the person is not reasonably believed to be a suspect in such offense ...." 42 U.S.C. § 2000aa–11(a). As set forth in note 1, *supra*, this statute evidences a special concern for privacy interests in cases in which a search for or seizure of documents would intrude upon a known confidential relationship, such as that between a lawyer and client. Only one lawyer in the firm, Charles Klitzman, and one employee, Robert O'Marra, were the focus of the postal inspectors' investigation, and the inspectors directed this investigation to only one aspect of Charles Klitzman's practice—representation in personal injury cases. Thus, because both the postal inspectors and the United States Attorney's Office, which approved the inspectors' action, knew that lawyers not targets of the investigation practiced in the Klitzman office, the government should have adhered to the restrictions imposed by this statute.

Additionally, the inspectors, and especially the United States Attorney's Office, also should have been aware of, and followed, the "Guidelines on Methods of Obtaining Documentary Materials Held by Third Parties," 28 C.F.R. §§ 59.1–.6 (1983), issued by the Department of Justice pursuant to the Privacy Protection Act. These regulations establish certain criteria and procedural requirements that the government must meet before using a search warrant to obtain documentary materials held by disinterested third parties. The regulations define "disinterested third party" as "a person or organization not reasonably believed to be —(1) A suspect in the criminal offense to which the materials sought under these guidelines relate; or (2) Related by blood or marriage to such a suspect...." *Id.* § 59.2(b). The regulations further recognize the problems that inure when the disinterested third party is an attorney. Section 59.4(b) sets forth specific procedures the government must follow before obtaining a warrant to search an attorney's office. The Department of Justice recognized that such searches are extremely sensitive because the executing officers often are exposed to confidential information, including information protected under the attorney-client privilege and the work product doctrine.

Section 59.4(b)(1)(i) provides that the government should not use a search warrant to obtain documentary material held by a third party unless the use of a less intrusive alternate means appears to jeopardize substantially the availability or usefulness of the material sought. More important, the regulation provides that no application for a search of a disinterested attorney's office shall be submitted without the approval of the appropriate Deputy Assistant Attorney General of the Department of Justice. *Id.* § 59.4(b)(2). Additionally, § 59.4 requires that when the government executes a warrant, the search must minimize, to the greatest extent practicable, scrutiny of confidential materials. *Id.* § 59.4(b)(4). In this case, the government proceeded as if this statute and these Department of Justice regulations were nonexistent.

We recognize that the statute and the regulations do not by their terms extend to an attorney, such as Charles Klitzman, who is the target of a criminal investigation. That one member of a firm is a suspect, however, does not act to forfeit the statutory protection afforded other lawyers in the firm who have no connection with the illegal activity. If, as here, the search is not confined strictly to the documents held by the subject of the investigation and for which he alone is responsible, then it appears that the provisions of the statute and regulations must be followed.

### V.

For the above reasons, we affirm the judgment of the district court granting the preliminary injunction and ordering that the government return the files and materials to the firm of Klitzman, Klitzman and Gallagher. In so doing, we now set forth a procedure that the parties should follow in any subsequent proper government effort to obtain documentary materials from the Klitzman firm.

3. Cal. Penal Code § 1524(c)–(f) (West 1982) requires the court to appoint a special master at the time of the issuance of the search warrant who will accompany the person who will serve

If the government requests specific materials, the Klitzman firm should have the right, in the first instance, to provide the documents voluntarily. If the law firm declines to produce the documents, the district court should institute a workable procedure to protect the interests of the litigants. The procedure should accommodate the needs of the investigating authorities and at the same time protect the significant interests of Klitzman clients who have no connection with the subject of the investigation and also the interests protected by the work product doctrine. California has adopted rather elaborate procedures in this respect.[3] Although it is impossible to utilize the full California panoply, the district court and the parties may explore the possible use of a master to assist the court.

For example, upon application by the government to the district court, which still has jurisdiction in these proceedings, and at the expense of the government, the court could appoint a master to examine *in camera* any material that the law firm objects to producing. The master could be considered a special officer of the court with full judicial immunities to preserve all confidences encountered and could make a ruling, which either party could then appeal to the district court. Such a procedure would vindicate both the interests of the government in investigating and prosecuting crimes and the confidentiality interests of the law office.

### VI.

We have considered the contentions of the appellants relating to the issuance of the preliminary injunction and will affirm the judgment of the district court ordering the government to return the materials to the appellee law office. We will also lift the stay of the judgment heretofore entered.

the warrant at the law office. The statute sets forth elaborate provisions to protect confidential matters.