**UNITED STATES of America, Plaintiff,**

v.

**Brian Patrick REGAN, Defendant.**

**No. CRIM.01–405–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Dec. 17, 2002.

January 1, 1999.

Patricia Haynes, Esquire, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

James Clyde Clark, Esquire, Land, Clark, Carroll & Mendelson, Nina J. Ginsberg, Esquire, DiMuro Ginsberg & Mook, Joseph McCarthy, Esquire, Delaney McCarthy & Colton, Jonathan Shapiro, Esquire, Alexandria, VA, for Defendant.

### *MEMORANDUM OPINION*

LEE, District Judge.

THIS MATTER is before the Court on the Government's Motion for Leave to Image Computer Media in the Courthouse Secure Classified Information Facility ("SCIF"). The issue before the Court is whether the Government has demonstrated probable cause to believe that the Defendant may be engaged in ongoing criminal activity using the Court's computers in his lawyers' SCIF, such that a search of the SCIF's computer(s) ought to be con-

ducted by Court Order. Because the Government's evidence shows that the Defendant has not complied with the special measures rules, that he has secreted non-privileged materials in his cell, and that a recent seizure from the Defendant suggests he may be trying to communicate in code with persons outside the jail to secrete or destroy evidence, the Court finds probable cause to search his lawyers' computer(s) and floppy disk in the Court Secure Information Facility for evidence of ongoing criminal activity. For the reasons set forth below, the Court GRANTS the Government's Motion under very narrowly circumscribed measures.

## I. FACTS

Defendant Brian Patrick Regan has been indicted on several charges of attempted capital espionage against the United States. Defendant is accused of attempting to sell classified information to Iraq, Libya, and China. After Government surveillance of Regan, the authorities were led to believed that before Regan's arrest, he secreted classified information in various unknown locations. The Government has not yet located the classified information it alleges that Regan has hidden.

The Government has brought Regan before the Court on three occasions in the past two months to review issues of non-privileged documents being seized from Regan's cell at the Alexandria Adult Detention Center (the "Alexandria Jail"). This motion to image the Defendant's Computer in the SCIF follows yet a third incident involving a seizure of non-privileged information from Regan's cell. This most recent random jail search and seizure, (a "shakedown"), revealed letters to Regan's wife and his children, and a one-page document of code (an alphanumeric series of letters and numbers), which appears to have been typewritten. The Government contends that the letters to Re-

gan's wife and his children are written a code, which can only be understood by Regan's family or others and refers to hidden items and a variety of locations in the community. The letters appear to refer to buried items. Additionally, the Government alleges that the one-page document of code is a message intended for a particular recipient, with possible instructions for the destruction of documents that Regan has allegedly secreted in various locations. The Government suspects that Regan created these documents and that the electronic versions of the documents are contained on the hard drive on Defendant's lawyers' computer(s) in the SCIF, or on floppy disks in the SCIF because Regan has no access to computers or printers at the jail. The Government contends that Regan's possession of these items demonstrates that Regan is improperly using the Court's computer(s) in the SCIF to further his crimes and to obstruct justice. The Government further asserts that Regan is trying to communicate with persons outside the jail, in an effort to arrange the destruction or further concealment of classified information that he allegedly misappropriated from his employer.

Defendant, on the other hand, contends that the SCIF is the Defendant's attorneys' private law office, and, therefore, is not subject to search in the absence of probable cause. Moreover, the Defendant contends that the Government's evidence does not demonstrate probable cause that justifies the search of the contents of the SCIF's computers.

The Court grants the Government's Motion to Image Computer Media in the SCIF, for the reasons to follow.

## STANDARD OF REVIEW

### I. Probable Cause

The parties agree that the Government's motion is in effect an application

for a search warrant. The Fourth Amendment [1] requires the Government to demonstrate probable cause before a search warrant may issue. Probable cause is the level of suspicion necessary to justify intrusions by the government into a person's reasonable expectation of privacy. *See Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Fourth Amendment shields citizens from unreasonable searches and seizures of property. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Supreme Court has defined probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. 2317. Therefore, in order for the Government to secure a search warrant of the Defendant's SCIF computer(s), it must establish that a fair probability that contraband or evidence of a crime will be found on a disk or on a computer(s) in the SCIF. Moreover, because the Defendant's SCIF is an area that he and his attorneys must use to access classified information, the Government must overcome the attorney-client privilege and the attorney work product privilege. The Court first examines the Defendant's claim that the SCIF serves as a law office for him and his counsel. Next, the Court considers the applicability of the attorney-client privilege and the attorney work product doctrine to the areas the Government seeks to search. Finally, the Court explores whether either of those privileges can be overcome by the crime fraud exception.

## II. Area to Be Searched—SCIF as Defense Counsel's Law Offices

 The SCIF is a secure facility located in the courthouse where the Defendant and his attorneys may lawfully view classified information. Defense counsel may not remove certain classified information from the SCIF, and the Defendant may not remove classified information from the SCIF. The analogy of the SCIF to Defendant's attorneys' law office is proper in this context. The SCIF has been provided to the espionage defendant and his counsel so that they may have access to classified information to prepare for trial. The Defendant and his counsel must have access to classified information in a "prosecution free zone." Defense counsel and their client reasonably expect to be free to work in the SCIF to compose work papers, trial memoranda, and trial strategy, free from the roving eye of the prosecutor or the Court. Because the classified information involved in this case relates to national security, the information must be kept secure. The SCIF affords the Government a place to continue to protect classified information. While the attorney-client and the attorney-work-product privileges are important and vital to ensuring effective assistance of counsel, the Court will not allow the SCIF/law office to be used to conceal evidence of an ongoing or future crime.

In fact, the Defendant and his counsel are well aware that the Defendant's access to classified information in the SCIF requires strict adherence to certain rules. As a matter of fact, Defendant was recently reminded of these procedures when he was brought back before the Court for

---

**1.** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

having contraband in his cell. Therefore, Defendant is well aware that he may access classified information and review documents on computers in the SCIF, but he may not use the computer to compose correspondence to his family or friends. Defendant Regan is in custody under special measures, which restrict contact to his family, the outside world, and certain inmates at the Alexandria Jail.

In this case, a substantial question is presented by Defendant's conduct, certain information contained in unprivileged documents found in Defendant's possession, and certain observations about the supervision, or lack thereof, of Defendant while in the SCIF. Indeed, if the Government does establish that the SCIF is being used as an instrumentality in furtherance of a crime, the crime fraud exception operates to deny the attorney client privilege to prevent ongoing criminal activity.

■ Courts have long upheld the search and seizure of law offices. *See Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *In re Impounded Case (Law Firm),* 840 F.2d 196 (3d Cir. 1988); *Klitzman, Klitzman & Gallagher v. Krut,* 744 F.2d 955 (3d Cir.1984). Furthermore, searches and seizures of items from law offices are not unreasonable, *per se,* if measures are taken to protect certain privileges that might attach to documents contained therein. For example, the court in *Law Firm* used special measures to ensure that the warrant authorizing the search of the law firm protected privileged documents from being searched and seized. *Law Firm,* 840 F.2d at 202. That court held that it was "satisfied that the attorney-client privilege [would be] sufficiently protected by the procedure established by the magistrate requiring that the government obtain leave of the court before examining any seized items." *Id.* It further held that the procedure would "provide assurance that disclosure will be limited to those materials sought by the government." *Id.*

■ The "appropriate role of the reviewing court" of a warrant to search a law office "is to scrutinize carefully the particularity and breadth of the warrant authorizing the search, the nature and scope of the search, and any resulting seizure." *Klitzman,* 744 F.2d at 959.

### III. Attorney–Client Privilege

■ The Government's motion poses a difficult and challenging problem for the Court, because the Court is well aware of the sanctity of the attorney-client privilege, which "is one of the oldest recognized privileges for confidential communications." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). *See also Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998); *Hunt v. Blackburn,* 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488 (1888). The client is the holder of this privilege. *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir. 1994). Therefore, the Court wants to ensure that privileged information does not fall into the hands of the Government, absent sufficient justification.

■ The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Swidler & Berlin,* 524 U.S. at 403, 118 S.Ct. 2081. The privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir.1998) (quoting *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). When the privilege

applies "it affords confidential communications between lawyer and client complete protection from disclosure." *Hawkins,* 148 F.3d at 382. However, "the attorney-client privilege is to be narrowly construed." *Id.See also United States v. Oloyede,* 982 F.2d 133, 141 (4th Cir.1992) (same); *In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir.1984) (holding that attorney-client privilege is "recognized 'only to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth' ") (quoting *Trammel,* 445 U.S. at 51, 100 S.Ct. 906 (1980)).

 The Fourth Circuit has adopted the "classic test" for determining whether the attorney-client privilege applies to certain communications:

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to an act of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982) (quoting *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–359 (D.Mass.1950)). The proponent of the privilege bears the burden of demonstrating its applicability. *Jones,* 696 F.2d at 1072.

However, as will be shown below, the attorney-client privilege is not without its costs. Mainly, if the Government is correct in its assertion that the Defendant is using the Court's SCIF to further criminal activity or to obstruct justice, then, by law, the crime fraud exception will override the attorney client privilege.

## IV. Work–Product Doctrine

 Although not raised by the defense, the Government must overcome the attorney work product privilege, which protects work done in preparation for litigation, before it may successfully assert the crime-fraud exception. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re Grand Jury Proceedings,* 33 F.3d 342. There are two types of work product: fact work product and opinion work product. Fact work product, "can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Id.* at 348. Opinion work product, "is even more scrupulously protected as it represents the actual thoughts and impressions of the attorney . . . ." *Id.* "Opinion work product enjoys a nearly absolute immunity and can be discovered in very rare and extraordinary circumstances." *Id.* Protection of the attorney's work product may be asserted by either the client or the attorney. *See In re Grand Jury Proceedings,* 33 F.3d at 348.

## V. Crime–Fraud Exception to Attorney–Client and Work–Product Privilege

### A. Crime–Fraud Exception to Attorney–Client Privilege

 Courts have long recognized that, in certain circumstances, the attorney-client privilege "ceases to operate as a safeguard on the proper functioning of our

adversary system," when the privilege is used to commit future crimes. *United States v. Zolin*, 491 U.S. 554, 562–563, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). The purpose of the attorney-client privilege— to promote honest communication between an attorney and client—"ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*." *Id.* at 562, 109 S.Ct. 2619 (quoting 8 J. Wigmore, Evidence, § 2298, p. 573 (emphasis in original)). The purpose of the crime-fraud exception is to ensure that the " 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime.' " *Zolin*, 491 U.S. at 563, 109 S.Ct. 2619 (quoting *O'Rourke v. Darbishire*, [1920] A.C. 581, 604 (P.C.)).

■■■■ The question becomes, though, after a party has opposed the assertion of the attorney-client privilege, how does the Court determine whether the crime-fraud exception applies. Initially, the party asserting the privilege must demonstrate that the privilege is applicable. Thereafter, the "government must make a prima facie showing that the communications sought to be reviewed fall within the crime-fraud exception," in order to overcome the attorney-client privilege. *In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir.1989). Additionally, the Supreme Court has held that the existence of the crime-fraud exception does not have to be determined by evidence independent of allegedly privileged information; rather, the district court may conduct an *in camera* review of the allegedly privileged information itself to determine whether the crime-fraud exception applies. *Zolin*, 491 U.S. at 556–557, 109 S.Ct. 2619. Furthermore, review of the allegedly privileged material by the district court under these circumstances does not waive the attorney-client privilege. *Id.* at 568, 109 S.Ct. 2619. The

Government may not, however, request an *in camera* review of privileged information as a "groundless fishing expedition, with the district courts as their unwitting (and perhaps unwilling) agents." *Id.* at 571, 109 S.Ct. 2619.

■■■■ In order for an *in camera* review to be triggered, the district court judge "should require a showing of a factual basis adequate to support a good faith belief by a reasonable person ... that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* at 572, 109 S.Ct. 2619 (internal citation omitted). After the factual basis has been established, it is within the sound discretion of the Court to conduct the *in camera* review. *Id.*

### B. Crime–Fraud Exception to Work–Product Doctrine

■■■■ The Fourth Circuit has also recognized that the crime-fraud exception can be invoked to vitiate the attorney work-product privilege. *See In re John Doe*, 662 F.2d 1073, 1079 (4th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). However, the burden of overcoming the privilege is on the party opposing the privilege to show a "substantial need" for the attorney's work product. The Government must make the same prima facie showing to overcome the work product privilege as is required to overcome the attorney-client privilege, discussed above.

## VI. Application

### A. Probable Cause

■■■■ The Government's evidence, as set forth in its motion, meets the probable cause standard, because the documents sought by this search warrant demonstrate that the Defendant used a computer to

create letters to persons outside the jail to communicate with others about secreted material. Further, the Government's motion shows that Regan had in his possession three computer-generated documents, written in code, describing hidden objects. Additionally, the record shows that Regan allegedly copied classified information which has not been recovered. Furthermore, the Defendant has been brought to Court three times in the past two months for violating the special measures rules for the jail. On the first occasion, the Defendant was allegedly caught with contraband documents in his cell by an Alexandria Jail Deputy Sheriff, but before the materials could be confiscated, the Defendant ran to his cell and flushed the documents down the toilet. On the second incident, officers at the Alexandria Jail discovered a detailed map of a park, drawn by the Defendant, indicating where items were buried. On this most recent search, letters to the Defendant's wife and children, along with a one-page document of code were discovered in Defendant's possession. The contents of those documents indicate that the Defendant wants to use his family and others to retrieve secreted materials in order to destroy them before the Government is able to retrieve them. Moreover, the object of the Government's application for a search here are several of the documents that were found in Defendant's cell. The documents are type-written, and the Government has established, through testimony of the FBI agent responsible for Regan's security at the jail, that the Defendant does not have access to a typewriter, computer, or other word-processor at the jail. The only place where Defendant does have access to a computer and printer is in Defendant's SCIF. The Court concludes that these facts demonstrate more than a fair probability that evidence of a crime, obstruction of justice, will be found on the hard drive of the computer(s) in the SCIF.

## B. Area to be Searched—SCIF/Defense Law Offices

Courts have frequently held that searches of law offices are not *per se* unreasonable, as long as the Court established procedures to ensure that privileged material is not inadvertently revealed. The procedures set forth in this Order will limit the search to four documents: (1) two letters to Defendant's wife Anette, (2) a letter to Defendant's children, and (3) a one-page document of code. As will be discussed, neither of these documents are privileged, so there is no risk of harming the Defendant's trial preparation by this very limited search.

## C. Attorney–Client Privilege Does Not Apply

 In order to be protected by the attorney client privilege, the communication must be disclosed to the lawyer for the purpose of gaining legal advice. The letters sought by the Government do not fall within this privilege because they were not addressed to defense counsel. The letters were addressed to members of Defendant's family. Furthermore, on one of Defendant's visits to Court, after having violated the Alexandria Jail's procedures, the Judge instructed the Defendant that he was to clearly mark all materials for his lawyer "Attorney Client Privilege" or some other reasonable method to indicate that the information was for his attorney. Neither of the documents sought by this application had such a marking, nor can it be said, after reviewing the recovered documents, that they were created for the purpose of gaining legal advice from Defendant's counsel. Therefore, the documents are not protected by the attorney-client privilege.

## D. Work–Product Privilege

 This privilege does not apply here because the documents are not the opin-

ions or the impressions of Defendant's attorneys, made in connection with this case. The documents were created by the Defendant. However, assuming, *arguendo*, that the work product privilege did apply, the privilege could be overcome by the Government's showing of a "substantial need" for the documents and an inability to retrieve the documents from another source without undue hardship. As indicated in Count Four of the Indictment, the Government charges the Defendant with copying and secreting classified documents, which it has yet to recover, in locations known only to the Defendant. According to the contents of the three documents at issue, the Defendant is trying to have documents or items destroyed by persons outside the jail, before they can be recovered by the Government. This scenario undoubtedly presents a substantial need to search the Defendant's computer(s) in the SCIF for these documents, and the Court knows of no other alternative measure to retrieve the documents. Therefore, the attorney work product privilege cannot protect these documents from the scope of this search.

### E. Crime Fraud Exception

■ In the interests of the Defendant, the Court assumes that both the attorney-client privilege and the attorney-work-product privilege apply to the contents of the hard drive or the SCIF's computer(s) and floppy disks. Regardless, the circumstances are such that the crime fraud exception overrides those privileges because the Government has made a *prima facie* showing that the exception applies through the following: the nature of Defendant's behavior, and the content of the documents retrieved from Defendant. Furthermore, the Court has conducted an *in camera* review of the documents allegedly falling within the exception, and the Court concludes that there is an adequate factual basis to support a good faith belief by a reasonable person that the crime fraud exception applies.

Because the Defendant's conduct gives rise to probable cause to believe that the Defendant is using the Court-provided law offices to create prohibited forms of communication to persons outside the jail, in an effort to have important classified documents destroyed, the Government must have access to the SCIF's computer media to search for evidence of a crime. These documents potentially affect national security. For obvious reasons, the crime fraud exception applies to vitiate any privilege which might normally apply.

Having demonstrated probable cause, and having overcome all applicable privileges, the Court GRANTS the Government's Motion for Leave to Image Computer Media in the Courthouse SCIF, under the narrowly circumscribed directions set forth in the accompanying Order.

### VII. Pre–Trial Search Procedures

The Court is mindful that the Defendant's SCIF computers may contain attorney-client information and memoranda; therefore the Court will carefully circumscribe the parameters and method of the search.

■ In order to avoid any claims that the Government has had access to defense counsel's pre-trial preparation, the Court is not going to allow the United States Attorney or the Federal Bureau of Investigation to conduct the search. Rather the Court is going to refer this matter to a United States Magistrate Judge to supervise the process of securing the defense's SCIF computer hard drives and disks for imaging and their return to counsel. The United States Magistrate Judge will work with a court selected neutral computer expert with proper security clearances to image the Defendant's computer hard

drives and to search for the enumerated four items: (1) two letters to Anette Regan; (2) letters or memoranda to his children; and (3) a page of code composed of letters and numbers. All of the items listed above will be attached to the court's Order, UNDER SEAL. If these items are found on the hard drive, then the computer expert will provide this information in electronic and hard copy to the United States Magistrate Judge for review. The United States Magistrate Judge is directed to report the computer expert's findings to all counsel and the District Judge. CIPA Court Security Officer Christine K. Gunning is directed to maintain the imaged hard drive in a secure location until the verdict is reached in this case and further order of the court. The accompanying order will provide specific details regarding the logistics of the computer imaging and search process.

## VIII. Post–Verdict Search Procedures

After the jury has reached its verdict in this case, the Government may seek leave of Court to conduct a further search on the hard drives and floppy disks. The Government shall notify defense counsel of its intentions by a written motion. The Government must notice its motion for a hearing with the Clerk's Office, and then the motion shall be heard by the Court. Once the Government has reviewed the material that was seized pursuant to the search, the Government may make use of the items as it deems proper.

Additionally, the appointed computer expert shall not reveal the contents of the search to anyone except the Magistrate Judge appointed to work on this case.

This Memorandum Opinion and its accompanying Order SHALL be placed UNDER SEAL, to avoid revealing any information that might adversely affect a potential juror in the trial of Defendant Brian Patrick Regan.

The Clerk is directed to forward a copy of this Order to counsel of record.